20-1029 Drew Burbridge v. Marcus Biggins, PO, et al. May it please the court. I do have to start off with a personal comment that the last time I had the pleasure of appearing in front of Judge Wolman was in 1986, and I doubt that he remembers it as well as I do, but I'm happy to have the pleasure of seeing him again. Welcome back. Welcome back. Thank you, Your Honor. If the court please, the appellants here are seeking to have this court recognize the intracorporate conspiracy doctrine in the context of an alleged 1983 conspiracy. We are also asking that the court, failing that, accord the appellant police officers qualified immunity as to the conspiracy claim that was alleged below. Individual appellant Biggins also seeks qualified immunity based on the allegation of his use of excessive force against Mr. Drew Burbridge. This case arose in the context of mass protests and disorder in the city of St. Louis in the fall of 2017, and the appellant officers were part of police units that were deployed to control disorder in downtown St. Louis on the night of September 17th, 2017. The district court denied summary judgment as to the conspiracy claim, and I have to say it pained me to take an appeal from Judge Clark's order. His opinion was very thorough and careful, but he did overlook the intracorporate conspiracy issue. He discussed it briefly in connection with his rejection of municipal liability claims against the city of St. Louis, but he never really addressed it insofar as it applied to the individual officers. Was the issue clearly raised and briefed like it has been in the Court of Appeals? Yes, Your Honor. It was very clearly raised by the motion for summary judgment. It was argued explicitly, and we think it was adequately raised and presented to Judge Clark.  And insofar as that issue goes, Judge Clark did comment on the practice of the Eastern District, who declined to apply intracorporate conspiracy doctrine. Although typically in the Eastern District, the district judges refused to apply it at the motion-to-dismiss stage, and we think that's at war with the Supreme Court's guidance in Iqbal and Twomley. We don't see any basis for refusing to do that, but that's not what Judge Clark did in this case. Judge Clark had a summary judgment. He felt he did not need to address the doctrine directly. We feel that as to the individual defendants, it did need to be addressed, and it does need to be addressed. And this type of theory is a backdoor way to impose vicarious liability or joint—several liability on officers, police officers who do not directly participate in unlawful conduct. But more importantly, as Judge Easterbrook outlined it in a 1985—the intracorporate conspiracy doctrine is consistent with the law as it stood in 1871. And the employees of a corporation, with some narrow exceptions, cannot conspire among themselves, and so there is no conspiracy when you have the employees of the same entity entering into an agreement, regardless of what the agreement might be. And we think that it's very important that this doctrine be recognized. The Eighth Circuit has not addressed the issue. If the court chooses, of course, in the context of qualified immunity, the court need not decide the intracorporate conspiracy doctrine issue, and it can proceed to the second criterion of qualified immunity, which is, of course, whether a right or a violation was clearly established. And the Supreme Court in the Ziegler case, which was in the context of 42 U.S.C. 1985, nevertheless accorded qualified immunity to the defendant in that case because the law on intracorporate conspiracy in the civil rights context is unsettled. I would like to revert for a moment to the applicability of the doctrine. The majority of the circuits have accepted the application of the doctrine in 1983 cases. This circuit has applied it in 1985 cases. So we think it should be applied as a matter of law, but clearly the court can, if it chooses, proceed to the second prong of qualified immunity. And if it does choose to go that route, we think quite clearly that the individual appellants are entitled to qualified immunity on the intracorporate conspiracy theory. Mr. Darker, what about our court? Even if there was no discussion of the doctrine, don't we have cases where claims have been allowed to go forward based on 1983 claims involving conspiracy between officers? Haven't haven't those kinds of claims been recognized? Yes, Your Honor. The court in S.L. and in Bonenberger, I think it was, which unfortunately involved the city of St. Louis, did allow conspiracy claims to go forward. There was no reference whatsoever to the intracorporate conspiracy doctrine. That was not raised by the defendants. It was not discussed by this court in its opinions. And I think it's quite clear that this court has never addressed the doctrine in the context of 1983. And I think my distinguished opponent misinterprets the effect of the holdings in S.L. and the related cases where this court sustained liability for a 1983 conspiracy because the issue was never raised. Qualified immunity was raised, but the argument was not based on the unsettled state of the law in intracorporate conspiracy. The argument was that the law of conspiracy under 1983 generally was not settled such that the individuals could be liable. But I have to emphasize that the intracorporate conspiracy doctrine was never discussed in any of those cases in 1983 cases. And I think that the reasoning of the Sixth and the Eleventh Circuits adopting it is very cogent, and so it should be applied. But again, failing that, I think the individual appellants are entitled to qualified immunity on that theory. As to the excessive force claim against Appellant Biggins, and there were several officers involved. We could not make an argument to appeal on behalf of Sergeant Rossimano or Officers Burton and Rachis. There were clearly disputed fact issues relating to their conduct toward Mr. Burbridge that I think made an appeal improper. But for Officer Biggins, we submit that the undisputed, uncontroverted facts established that he used at most de minimis force in helping to restrain Mr. Burbridge while the other officers, Rachis and Burton, zip-tied, handcuffed him, and subdued him. And I confess that in my brief, I was a little–I was guilty of what I accused the court of in terms of the issue of de minimis use of force. And, you know, I have to say that I think, you know, the law in Chambers v. Pennycook and related cases, the law of the circuit is quite clear that there is no de minimis threshold for excessiveness. But I think there is a de minimis aspect to the application of force, and I think that Officer Biggins, by kneeling–and we submit that the record is indisputable that all he did was kneel on Mr. Burbridge's legs while the other officers handcuffed him and otherwise subdued him. And if the video is inconclusive, we think that the summary judgment record otherwise is conclusive that that's all he did. And we think that he's entitled to immunity because he could not have known that merely kneeling on an arrestee's legs while other officers who were already in the process of arresting him were acting to subdue him was a violation of clearly established rights and was an excessive force. So we think that–and I did not have time to write a 20AG letter with regard to, I believe, it's Shelton v. Stevens, which came down very recently, which I think Judge Colleton wrote involved a police officer stomping on the ankle of an arrestee while there was a struggle to subdue him. The circumstances are different, but I think the–what's important about that case is the recognition of what Judge Loken has called the hazy border–and I think that Saussure v. Katz probably used that phrase before–the hazy border between excessive and reasonable force. And we think–Officer Biggins, I think the video is clear that all he did was kneel. He had a shield in one hand. He was in riot gear, and he knelt on Mr. Burbidge's legs. And I think that under the circumstances of a mass arrest where Judge Clark held correctly that there was arguable probable cause, we don't think Officer Biggins's administration of that slight amount of force amounts to the kind of excessiveness that comes within proscription of the Fourth Amendment. So we submit that Judge Clark's order should be reversed and remanded with directions to dismiss. Question on the Biggins matter. Do you think the district court was saying that the kneeling was sufficient to make out excessive force, or was the district court saying that there's a fact issue about what Biggins was doing, what he did, or did the district court say a third thing that I'm not mentioning? I think the district court thought there were factual disputes, and there was evidence from the plaintiffs that officers, in the plural, struck and mistreated Mr. Burbidge. But we think that notwithstanding Judge Clark's analysis of the record, we think the record is quite clear that all Mr. Biggins did was the kneeling, and I don't think Judge Clark ever directly addressed whether that in and of itself was excessive. I think that his analysis was a little too broad brush. I don't think he carefully looked at Biggins's role as opposed to the other officers. Well, he clearly asked to analyze each defendant individually. That's for sure, but I'm just wondering if he said there were fact issues about what Biggins did, whether that's beyond our jurisdiction to review in a qualified immunity appeal, or whether he didn't say that and he just erred by not separating out the analysis. That's what I'm trying to drill down on. Well, I think the error was in not separating out the analysis, Your Honor. I would like to reserve my paltry minute and a half for rebuttal, if I may. You may. You may. Very well. Thank you for your argument. Mr. Newton, we'll hear from you. Yes, Your Honor. The court contacted me and indicated I was freezing. Can everyone see me and hear me? Okay. Yes. Yes. Thank you. May it please the court opposing counsel, Mr. Durker. This case presents the court the opportunity to clarify whether the intra corporate conspiracy doctrine should be applied to 1983 cases in this circuit in a similar manner as it is currently applied to 1985 cases. The appellant invites this court to adopt a categorical policy that it is legally impossible for one police officer to conspire with another to deprive an individual of his rights under section 1983. Appellee argues that the intrastate conspiracy doctrine should not be applied so categorically to civil rights claims under 1983 because historically that doctrine was geared towards protecting corporations and corporate actors from civil liability arising from routine decision making. And routine decision making is rarely the focus of a 1983 complaint. As the 11th Circuit said in Brever, a doctrine designed to allow one corporation to take actions that two corporations could not agree to should not be construed to permit the same corporation and its employees to engage in civil rights violations. Even if the intra corporate conspiracy doctrine were applied to 1983 cases in this circuit, it would not apply to this case. Police misconduct, police conspiracies and the use of excessive and unconstitutional force by police officers are not the product of routine police work and should not be protected. This was somewhat unartfully addressed by me in the briefing, so I want to clarify. When the police assaulted Drew Burbridge, the officers were clearly acting in the scope of their employment as police officers. They were on duty, they were in uniform, they were acting at the direction in part of the St. Louis Metropolitan Police Department. However, their use of excessive force and any conspiracy to engage in that force or otherwise deprive the appellee of his constitutional rights and their failure to then report that use of force could not conceivably be classified as the product of routine police department decision making. And therefore, the doctrine should not protect them from liability. Turning to the question of qualified immunity on the second stage, the appellants alternatively asked this court to find that they were entitled to qualified immunity because the question of whether they could legally be held liable for conspiring amongst themselves to violate the appellee's civil rights was unsettled. As argued, regardless of the circuit decision regarding whether the doctrine should be generally applied in 1983 cases in the circuit, it should not apply in this case. And with it not applying in this case, there can be no question that I don't think it can be argued that these officers thought their actions were in the category of routine decision making. And if they were not in the category of routine decision making, if the intracorporate conspiracy doctrine could therefore not apply, it's well settled. And there are numerous cases in the circuit where conspiracy between officers in the same department is applied. As the court referenced earlier, I believe it was Judge Shepard, the S.L. Lenderman case, which involved a conspiracy between at least two officers of this department of which these officers should have been aware. And I believe that that point on its own would defeat qualified immunity as the city is asking for it. What about the point that the case didn't even mention the doctrine and therefore arguably is not holding about whether the doctrine applies? That is correct. Lenderman did not even mention the doctrine. As best I can tell, Your Honor, none of the parties raised it. The court did not consider it. But I think that separating it out, if the doctrine if there is an exception to the doctrine, and in this case, it would be that the doctrine would not apply because it is the actions of these appellants was beyond routine decision making. Then it defaults to, well, does the circuit then otherwise allow conspiracies between officers of the same department? And there are examples that it in fact does. Where does the routine decision making requirement come from? I think that it comes from the common law, Your Honor, when this intracorporate conspiracy doctrine was discussed in the antitrust context. I think the point of it was to excuse corporate actors from these decisions. And the language in many of these cases repeats this routine decision making. I think that when you have best authority, if we wanted to read up on why you think that's an element of the doctrine, do you have a particular case or historical have one? Bear with me, Your Honor. As I read that 11th Circuit case that the city relies on, they seem to think scope of employment was the key element. I don't recall anything about whether the decision making was routine or non routine. If you have some authority, please write. Oh, I'm sorry, Your Honor. Driver certainly does. And that is, I believe, the 11th Circuit case you're referring to. I believe the court in Brever versus Rockwell Industrial, which is a 10th Circuit case from 1994. If memory serves me, it does discuss that routine decision making. And I believe that as far as case law goes, Your Honor, that would probably be the strongest authority that the appellee could rely on in search of an exception for the intracorporate conspiracy doctrine. Would you say that whether that exception is available is a matter of dispute in the courts? I would, Your Honor. I think that's... Would that cause a problem in terms of qualified immunity if the law is unsettled about the availability of the exception? Would that tend to favor qualified immunity? I think if this circuit and this panel follows the reasoning that was followed by the Supreme Court in Ziegler versus Abbasi, then yes, the appellee would have a problem on that. Wouldn't we have to follow the approach of Ziegler? Or how would you distinguish it if you think not? I think that with here, if the exception is applied, that clearly if this case hinges on the intracorporate conspiracy doctrine, whether the officers were aware that it was in play. If the court says it was in fact not in play because this exception applies, then I think that it goes in favor of the denial of the immunity because the officers are on notice from other cases in this circuit that they can indeed conspire with each other within the department. So I don't think they'd be able to come in and say, well, under no circumstances are we ever allowed to conspire for the violation of civil rights. There's case after case where they are in fact denied qualified immunity for that. But if the court comes in and says the intracorporate doctrine does apply, then following the logic of Ziegler versus Abbasi, then yes. All right. Thank you. Thank you, Your Honor. Turning to Appellant Biggins and his request for qualified immunity, this matter was considered in detail by Judge Clark, who found that while the appellee did not individually identify the officers who were striking him, that fact alone should not entitle Biggins to summary judgment as Appellant Biggins personally participated in the arrest and the use of force should be a question of fact for the jury. As the panel has correctly pointed out, I do not believe that Judge Clark went through an individual analysis of each officer's role. Instead, he referred to the officers as a group. But I do not believe that Officer Biggins, Appellant Biggins' role in holding Mr. Burbridge down while two fellow officers are kicked and hit and a third officer is allowed to pepper spray him can be taken in the abstract. And I think that that was the intent of Judge Clark's ruling and his analysis that the officers all contributed to the assault of Drew Burbridge. But to what extent would be a question of fact for the jury after hearing the testimony of the witnesses and reviewing the video on that basis? I do not believe that this issue is ripe for adjudication by this panel. Regardless, if the panel decides to review it, I simply don't think that Appellant Biggins' conduct can be abstracted. While the act of perhaps holding someone down may have an analysis of de minimis force, doing so in conjunction to allow other officers to physically assault and chemically assault the appellee, I think needs to be looked at. And I think that merits consideration by the jury regarding what role and what liability that leads to. Is there an aiding and abetting theory that you're suggesting then that Biggins was aiding and abetting the other officers who then applied excessive force? Is that the idea? That has not been separately pleaded as a cause of action, Your Honor. But I think that that is the idea, that it was no one kick or one punch by any one officer. It was a combined assault by a minimum of four officers on Mr. Burbridge. But you've got to have a theory of liability as to each person. I don't think you can hold one officer liable because of what some other officer done, and that's why you've alleged a conspiracy. But here we're talking about Biggins individually, so I'm trying to understand what is your theory of liability as to him personally. Your Honor, I believe he directly participated in this assault. As Judge Clark pointed out, the video is somewhat ambiguous, and I know the court has it on its record and has reviewed it. Mr. Burbridge testified that he lost consciousness at one portion of this assault. He had chemical mace put into his eyes, and he is unable to specifically indicate which officer punched him, which officer kicked him. We do know which officer maced him, but I believe that there is enough evidence on this record that a jury, in its review of this video, could find that this officer, Appellant Biggins, did more than just hold the feet. We don't know who administered what kick or what punch, and I think that needs to be for the jury's determination. There is no doubt, though, that Officer Biggins was physically present and participating in the series of events that resulted in Appellee Burbridge's physical injuries and assault. Your Honors, if there are no additional questions, I would say that after considering these matters, I ask you to affirm the decision of the District Court and remand this matter for trial on all surviving counts. Thank you so much for your time and attention. Counsel, question before you finish. You mentioned the video, and I've watched the video. Do you agree with the District Judge that the video really doesn't help that much? Your Honor, I must have watched that video several hundred times. I believe that in my role as an advocate, I am certainly seeing something different in that video than Mr. Durker is, that those officers are, and that even Judge Clark is. So, no, I understand Judge Clark's reference to the ambiguity, and I certainly understand how others could find it ambiguous, but I see a group of officers participating in a physical assault there, and that may be a result of my advocacy and my interest in this matter, Your Honor, but that's how I view that video. Sure. Got it. Thank you. Thank you, Your Honors, for your attention. If the Court please, with regard to the routine decision-making argument, you know, I would point out that in Ziegler, the allegation was that the government officers had conspired to discriminate against detainees based on race and ethnicity, and if that's routine decision-making, then I think all the other actions that have been taken by the District Court would be the same. The activities of the defendants in this case would qualify as routine decision-making, but I don't think that's the test. I think the test is whether they're acting within the scope of their employment, and clearly these officers were acting in a mass arrest that Judge Clark found lawful, or at least arguably lawful, and so their participation was as officers and employees of one governmental entity. I think the SL and the other cases which did not discuss intercorporate conspiracy, but nevertheless I think they illustrate where employees go outside the scope of their authority to cover something up or to discriminate on the basis of race and employment, so it's a little different. And then the whole issue of exceptions is itself unsettled as a matter of law. As to Officer Biggins, you know, the video I think is inconclusive, but I think the record is otherwise conclusive that he did not participate in the beating, that all he did was kneel on the legs. But clearly if the record is inconclusive, then summary judgment was properly denied, so I can't, you know, I think it's conclusive as Mr. Newton has observed. We advocates look at it. I think Judge Shepard thinks the video is inconclusive. I think it is too, but I think the rest of the record is conclusive, so I submit that Judge Clark should be reversed. If Judge Clark thought there were fact issues about what Biggins did and the video is not conclusive, so it's not a Scott versus Harris type case, then would we go beyond our authority to discuss what the evidence, what a jury could find from the evidence? Isn't that a problem under Johnson against Jones? Well, Your Honor, I think the court would go beyond its authority only if it tried to resolve a disputed issue of fact. I think the court is not bound by Judge Clark's conclusion as to whether there is a disputed issue of fact. I think Barron's versus Pelletier makes that clear that if the record is conclusive in this court's analysis, then Judge Clark can be reversed. What do you think Johnson against Jones stands for, then? I beg your pardon? What do you think Johnson versus Jones stands for? Well, you have them only on legal issues, not on questions of evidentiary sufficiency. Correct. That's what Johnson versus Jones says. So if Judge Clark says there's sufficient evidence to show that Biggins used more force than kneeling, then your appeal of that conclusion would be a dispute on evidentiary sufficiency. Well, only if the record supported Judge Clark's conclusion that there was an issue of fact, Your Honor. Whether it supports it is a question of evidentiary sufficiency. Well, I respectfully disagree. I think whether the summary judgment record shows an absence of a genuine issue of material fact is something this court can decide. Okay. Thank you for that. Thank you for that reply. Thank you to both counsel for your arguments. Thank you, Your Honor. I can't see Mr. Newton, but I assume he's still out there. And the case is submitted.